UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

CHARLES BOWMAN, RACHAEL BOWMAN,

                        Plaintiffs,        DECISION and ORDER

-vs-                                              21-CV-6366 CJS

PATHFINDER SOLUTIONS, LLC, JOHN DOES, SAM DOES, MARK LINCOLN,

                        Defendants.
_____

## INTRODUCTION

Charles Bowman and Rachael Bowman ("Plaintiffs") commenced this action in New York State Supreme Court alleging state-law tort claims including assault, battery, and false imprisonment. Significantly, Plaintiffs allege that the torts were committed against Charles Bowman while he was protesting on land owned by the Cayuga Indian Nation ("CIN"), by persons purportedly acting as officers of the Cayuga Nation Police Department ("CNPD"). Plaintiffs, though, allege that CNPD is not a legitimate police force, and that Defendants therefore had no authority to restrain or arrest Charles. Defendants removed the action to this Court, alleging that Plaintiffs' claims "turn on whether the [Cayuga] Nation's police force is lawful, which is a disputed and important question of federal law."[1] Now before the Court is Plaintiffs' Motion to Remand the action to state court, ECF No. 5, based upon their contention that removal was not authorized by this Court's "arising under" federal-question jurisdiction since the Complaint raises only state-law claims. For the reasons discussed below, the Court finds that Defendants have failed to sustain their burden of demonstrating that removal was proper, and the Motion to Remand is therefore granted and the case is remanded to state court.

---

[1] ECF No. 1 at p. 2.

1

BACKGROUND

The following facts are taken from Plaintiffs' Complaint and are assumed to be true for purposes of determining the Motion to Remand.  On February 29, 2020, Charles Bowman and others were present on land belonging to the CIN to protest certain actions by the federally-recognized leadership of the CIN.  Also present at that time on the CIN property were persons wearing uniforms of the CNPD and purporting to act as members of the CNPD ("the CNPD Officers").  The CNPD officers included the individual defendants sued in this action, who were employed by defendant Pathfinder Solutions, LLC, which had a contract with CIN to provide police services.  None of the Defendants sued herein are members of the CIN.

The CNPD Officers used physical force to restrain and confine Charles Bowman against his wishes.  Such force included spraying pepper spray in Charles's face; punching and kicking Charles in the face and body; handcuffing Charles; searching Charles's body and confiscating items of personal property including his phone and wallet; and placing Charles on a bus with other detained protesters.

On February 25, 2021, Plaintiffs filed this action in New York State Supreme Court, Seneca County.  The Complaint purports to state the following causes of action: 1) negligent hiring, training and/or supervision of employees; 2) assault; 3) battery; 4) false imprisonment; 5) intentional infliction of emotional distress; and 6) loss of consortium.

The Complaint does not purport to sue the CIN or any member thereof, nor does it allege that the torts were committed on the CIN reservation.[2]

Further, the Complaint denies that the defendants sued herein had any legal authority to makes arrests or to otherwise conduct themselves as police officers on behalf of

---

[2] *See*, Plaintiffs' Memo of Law, ECF No. 5-3 at p. 11, n. 5 ("Plaintiffs' complaint alleges that the actions occurred on 'Cayuga Indian Nation fee land subject to Seneca County's jurisdiction.'  Plaintiffs never used the word 'reservation' in their complaint.").

the CIN.  In that regard, the Complaint makes several assertions concerning the alleged invalidity of the CNPD.  For example, the first paragraph of the Complaint states, "This is an action against an illegitimate 'police force' that brutally abused and terrorized a citizen of Seneca County," and the second paragraph refers to the CNPD Officers as "private mercenaries acting under the guise of a 'police force.'"  The Complaint further states, in pertinent part, as follows:

> [A]t all times pertinent, defendants wore jackets and/or insignia that state[d], 'Cayuga Nation Police,' despite having no lawful authority as a law enforcement department, particularly in connection to addressing non-CIN citizens such as Plaintiff. . . . [None of the protesters were] lawfully arrested by the defendants. . . . Prior to the incident at issue, various government entities warned their citizens that the 'Cayuga Nation Police Department' had no authority to exercise police power in Seneca County, New York. . . . Further, the police department's illegitimacy was emphasized by their unlawful actions on February 29, 2020, wherein largely white, non-native, out-of-state actors assaulted and kidnapped Plaintiff, all while wearing 'Cayuga Nation Police' insignia. . . . Defendants' actions against Plaintiff were not subject to qualified immunity because, among other things, they were not legitimate officers of the law with any jurisdiction over the property or person at issue.

Complaint, ECF No. 1-1.  The Complaint demands money damages for the various causes of action but does not seek any kind of declaratory or injunctive relief concerning the alleged illegitimacy of the CNPD.

On May 5, 2021, Defendants removed this action to this Court from New York State Supreme Court, Seneca County, purportedly on the basis of federal question jurisdiction and 28 U.S.C. §§ 1331, 1441, and 1446.  The Notice of Removal stated, in pertinent part:

> This case presents a challenge to the legality of the police force of the Cayuga Nation, a federally recognized Indian Nation, which Plaintiffs press via various state-law tort claims. . . . All of these claims turn on the Bowmans' assertion that CNPD is 'illegitimate.'  That assertion frames the Bowmans' entire case and pervades the Complaint's counts. . . . Removal is proper because, as framed by Plaintiffs, the Complaint's claims turn on

3

> whether the Nation's police force is lawful, which is a disputed and important question of federal law. Based on their assertion that the Nation's police force is illegitimate and unlawful, Plaintiffs contend that the CNPD's actions were tortious, rather than protected law enforcement activities. And that assertion, in turn, raises a threshold question of federal law. Federal law governs the right of federally recognized Indian nations to establish and deploy police forces (as well as the scope of the authority that those police forces may exercise). And because this case "necessarily raise[s] a stated federal issue, actually disputed and substantial, which a federal forum may entertain," removal is proper under *Grable & Sons Metal Products, Inc. v. Darue Engineering & Manufacturing*, 545 U.S. 308, 312-14 (2005); *see Gunn v. Minton*, 568 U.S. 251, 258 (2013).

ECF No. 1 at p. 2.

On May 12, 2021, one week after removing the action, Defendants filed a Motion to Dismiss (ECF No. 3) the action pursuant to Rules 12 and 19 of the Federal Rules of Civil Procedure. However, on June 4, 2021, Plaintiffs filed the subject Motion to Remand (ECF No. 5) the matter to state court, on the grounds that there is no federal question asserted in their Complaint. Since the Motion to Remand calls into question the Court's jurisdiction to consider this action, the Court has held Defendants' motion to dismiss in abeyance pending its disposition of Plaintiffs' application.

Plaintiffs maintain that remand is required because the Complaint raises only state-law tort claims that do not necessarily require an inquiry into tribal authority or the legitimacy of the CNPD, and because the language in the Complaint concerning the alleged illegitimacy of the CNPD merely anticipates potential defenses, such as qualified immunity. *See, e.g.*, Pl. Memo of Law, ECF No. 5-3 at p. 6 ("In sum, this is a personal injury action for state tort claims against non-Indian parties. The Defendants wish to utilize qualified and sovereign immunity defenses, but that is not a basis for removal."). Plaintiffs contend that Defendants' purported reliance on *Grable & Sons Metal Products, Inc. v. Darue Engineering & Manufacturing* ("*Grable*") to remove this action is misplaced, since *Grable* provides only

4

an "extremely rare exception" for removal where the plaintiff's complaint necessarily raises a substantial issue of federal law, which is not the case here. *See*, Pl. Memo of Law, ECF No. 5-3 at p. 7 ("By their complaint, Plaintiffs have not raised a federal issue, let alone a substantial federal issue.").

Defendants oppose the application and insist that Plaintiffs' claims necessarily raise substantial issues of federal law. In that regard, Defendants frame Plaintiffs' claims as being that "*because* the CNPD's officers who detained Mr. Bowman are 'not legitimate officers of the law with any jurisdiction,' their actions constituted various state law torts." ECF No. 9 at p. 1 (emphasis added). In sum, Defendants maintain that *Grable* provides a proper basis for removal since Plaintiffs' claims, as pled, require them to prove that CNPD was not legally authorized to make arrests, and that such a showing will necessarily be determined by federal law. *See*, ECF No. 9 at p. 8 ("[F]ederal law governs the question of whether the Nation's police force is legitimate—and Plaintiffs cannot make out their tort claims without prevailing on that disputed and substantial issue of federal law. This suit was thus properly removed."); *see also, id*. at p. 9 ("Plaintiff's New York claims require them to prove, as part of their affirmative case, their allegation that the CNPD is 'illegitimate.'"); *id.* at p. 17 ("Plaintiffs cannot make out their tort claims *without* raising the federal-law question of whether the Nation's police force is lawful.") (emphasis in original).

The Court has carefully considered the parties' submissions and, for the reasons discussed below, finds that remand is required.

## DISCUSSION

Plaintiff has moved to remand the matter to state court, and the legal standard applicable to such an application is well settled:

> Under 28 U.S.C. § 1441(a), "any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be

> removed by the defendant or the defendants, to [a] district court of the United States"; however, "[i]f at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded." 28 U.S.C. § 1447(c). "A party seeking removal bears the burden of showing that federal jurisdiction is proper." *Montefiore Med. Ctr. v. Teamsters Local 272*, 642 F.3d 321, 327 (2d Cir. 2011).[3] Additionally, "[w]hen considering a motion to remand, the district court accepts as true all relevant allegations contained in the complaint[4] and construes all factual ambiguities in favor of the plaintiff" *Fed. Ins. v. Tyco Int'l Ltd.*, 422 F.Supp.2d 357, 391 (S.D.N.Y. 2006) (citation omitted).
>
> "One category of cases over which the district courts have original jurisdiction are 'federal question' cases; that is, those cases 'arising under the Constitution, laws, or treaties of the United States.'" *Metro. Life Ins. v. Taylor*, 481 U.S. 58, 63, 107 S.Ct. 1542, 95 L.Ed.2d 55 (1987) (citing 28 U.S.C. § 1331). In determining whether the Court has removal jurisdiction in the federal-question context, the "well-pleaded complaint rule" typically governs, which requires a court to consider only allegations in the complaint and not matters raised by the defendant in defense. *See Franchise Tax Bd. of the State of Cal. v. Constr. Laborers Vacation Tr.*, 463 U.S. 1, 9–10, 103 S.Ct. 2841, 77 L.Ed.2d 420 (1983); *Metro. Life*, 481 U.S. at 63, 107 S.Ct. 1542 ("The 'well-pleaded complaint rule' is the basic principle marking the boundaries of the federal question jurisdiction of the federal district courts."). "The well-pleaded-complaint rule confines the search for a basis of federal question jurisdiction to 'what necessarily appears in the plaintiff's statement of his own claim in the bill or declaration, unaided by anything alleged in anticipation or avoidance of defenses which it is thought the defendant may impose.'" *Lupo v. Human Affairs Int'l Inc.*, 28 F.3d 269, 272 (2d Cir. 1994) (quoting Taylor v. Anderson, 234 U.S. 74, 75–76, 34 S.Ct. 724, 58 L.Ed. 1218 (1914)).

*Hall v. LSREF4 Lighthouse Corp. Acquisitions, LLC*, 220 F. Supp. 3d 381, 387 (W.D.N.Y. 2016).

To reiterate the last sentence of the foregoing quotation, when applying the well-pleaded complaint rule in this context, the Court focuses on the allegations concerning the

---

[3] Accordingly, in connection with this motion to remand "[d]efendants bear the burden of establishing that federal jurisdiction is proper[.]" *Hall v. LSREF4 Lighthouse Corp. Acquisitions, LLC*, 220 F. Supp. 3d at 398 (citing Montefiore Med. Ctr. V. Teamsters Local 272, 642 F.3d 321, 327 (2d Cir. 2011), other citation omitted).

[4] Defendants, in their opposition to Plaintiffs' motion to remand, have submitted material outside the Complaint. Plaintiffs, in their Reply, urge the Court to focus on the Complaint and to ignore the "self-created record" submitted by Defendants. The Court is limiting its consideration to Plaintiffs' well-pleaded Complaint.

plaintiff's claims and does not consider allegations in the complaint concerning potential defenses that could be raised by the defendant that might involve federal law. [5] *See, Leroy v. Hume*, 21-2158-cv, 21-2159-cv, 2023 WL 2928353 at * (2d Cir. Apr. 13, 2023) ("[O]ur inquiry must be unaided by anything alleged in anticipation or avoidance of defenses which it is thought the defendant may interpose even if the defense is anticipated in the plaintiff's complaint, and even if both parties admit that the defense is the only question truly at issue in the case.") (citation and internal quotation marks omitted); *see also, Chicago Trib. Co. v. Bd. of Trustees of Univ. of Illinois*, 680 F.3d 1001, 1003 (7th Cir. 2012) ("[I]t is blackletter law that a federal defense differs from a claim arising under federal law."). [6]

As indicated earlier, Defendants argue that the Court has federal jurisdiction pursuant to the *Grable* decision. By citing *Grable*, Defendants are saying that while Plaintiffs' Complaint might appear to involve only state-law claims, it actually and necessarily involves an important issue of federal law. The legal principle to which Defendants refer is well settled:

> Section 1331 "is invoked by and large by plaintiffs pleading a cause of action created by federal law." *Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg.*, 545 U.S. 308, 312 (2005). Causes of action under state law may nonetheless "arise under" federal law for purposes of § 1331 even when the Complaint does not explicitly plead a federal cause of action if the four-pronged *Grable* test is met. Specifically, "federal jurisdiction over a state law claim will lie if a federal issue is: (1) necessarily raised, (2) actually disputed, (3) substantial, and (4) capable of resolution in federal court without disrupting the federal-state balance approved by Congress." *Gunn v. Minton*,

---

[5] There is an exception to this rule that is not relevant here. *See, Aetna Health Inc. v. Davila*, 542 U.S. 200, 207, 124 S. Ct. 2488, 2494–95, 159 L. Ed. 2d 312 (2004) ("There is an exception, however, to the well-pleaded complaint rule. '[W]hen a federal statute wholly displaces the state-law cause of action through complete pre-emption,' the state claim can be removed. *Beneficial Nat. Bank v. Anderson*, 539 U.S. 1, 8, 123 S.Ct. 2058, 156 L.Ed.2d 1 (2003).").

[6] Although, "the artful pleading doctrine," which is "an independent corollary" of the well-pleaded complaint rule," "prevents a plaintiff from defeating federal jurisdiction by omitting to plead necessary federal questions in a complaint." *In re Rsrv. Fund Sec. & Derivative Litig.*, No. 08 CIV. 11204 PGG, 2009 WL 10468043, at *1 (S.D.N.Y. Sept. 30, 2009) (citation omitted); *see also, Singh v. N. Am. Airlines*, 426 F. Supp. 2d 38, 42 (E.D.N.Y. 2006) ("The corollary of the well-pleaded complaint rule is the artful-pleading doctrine, which will not allow a plaintiff to defeat federal subject-matter jurisdiction by artfully pleading his complaint so as to make his claims appear to arise under state law when they are in fact based on federal law.") (citation omitted).

7

568 U.S. 251, 258 (2013).

*City of Granite City, IL v. AmerisourceBergen Drug Corp.*, No. 18-CV-1367-SMY-DGW, 2018 WL 3408126, at *2 (S.D. Ill. July 13, 2018).

Importantly, the "*Grable* exception/rule" does not alter the rule that a potential federal *defense* is insufficient to create federal jurisdiction:

> Defendant also argues that this case was removable because it raises a "substantial" federal question. A state cause of action that "necessarily depends on resolution of a substantial question of federal law" may, in some circumstances, be removable to federal court. *Empire Healthchoice Assur., Inc. v. McVeigh*, 547 U.S. 677, 689–90 (2006); *see also Gunn v. Minton*, 568 U.S. 251, 258 (2013); *Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg.*, 545 U.S. 308, 312 (2005); *Fracasse v. People's United Bank*, 747 F.3d 141, 144 (2d Cir. 2014). Defendant's argument fails, however, because the "substantial question" test "does not alter the rule that a potential federal defense is not enough to create federal jurisdiction." *Chicago Tribune Co. v. Bd. of Trustees of Univ. of Illinois*, 680 F.3d 1001, 1003 (7th Cir. 2012); *see also California Shock Trauma Air Rescue v. State Comp. Ins. Fund*, 636 F.3d 538, 542 (9th Cir. 2011); *In re Standard & Poor's Rating Agency Litig.*, 23 F. Supp. 3d at 395; *Greenwich Fin. Servs. Distressed Mortg. v. Countrywide Fin. Corp.*, 654 F. Supp. 2d 192, 202–03 (S.D.N.Y. 2009).

*Tokhtaman v. Hum. Care, LLC*, No. 18-CV-5907 (VEC), 2018 WL 5447543, at *2 (S.D.N.Y. Oct. 29, 2018) (citations to record omitted). Put differently, *Grable* only applies where the substantial federal issue necessarily arises as part of the Plaintiff's claim. Defendants here do not claim otherwise.

Rather, as noted earlier, Defendants maintain that Plaintiffs' claims do, in fact, necessarily raise important issues of federal law, even though the Complaint purports to raise only purely state-law claims for negligent hiring, training and/or supervision of employees, assault, battery, false imprisonment, intentional infliction of emotional distress, and loss of consortium. In that regard, Defendants insist that the Court should not look at the proof required for those claims generally, but, rather, that it must look at Plaintiffs'

8

"specific theory" concerning those claims.[7] In that regard, Defendants basically argue that since the Complaint alleges that the CNPD is not a legitimate law enforcement agency, Plaintiffs are required to prove that allegation, which will necessarily involve the application of federal law.

Defendants argue that they need only show that one of Plaintiffs' claims raises a substantial federal issue, and they contend that Plaintiffs' false imprisonment claim does so. Specifically, Defendants maintain that an element of false imprisonment is that the confinement was "not otherwise privileged," and that, "to establish this element, the Complaint requires Plaintiffs to establish (as they have pled) that the CNPD is not a '[l]egitimate' police force with 'authority to exercise police power in Seneca County.'"[8]

However, the Court disagrees and finds that the factual allegations in the Complaint do not "necessarily raise" a disputed federal issue as part of the false imprisonment claim or any other claim. In that regard, the elements of a cause of action for false imprisonment under New York law are clear:

> To prove the elements of false arrest under New York law, plaintiff must show: (1) the defendant intended to confine the plaintiff, (2) the plaintiff was conscious of the confinement, (3) the plaintiff did not consent to the confinement, and (4) the confinement was not otherwise privileged.

*Bernard v. United States*, 25 F.3d 98, 102 (2d Cir. 1994) (citation omitted). Significantly, to show that the confinement was "not otherwise privileged," the plaintiff need only prove that the confinement/arrest was warrantless. *See, White v. Cnty. of Dutchess*, No. 15 CV 8744 (VB), 2016 WL 4449720, at *7 (S.D.N.Y. Aug. 23, 2016) ("Because probable cause is an affirmative defense when a plaintiff is arrested without a warrant, here, plaintiff's warrantless arrest is sufficient to meet the fourth element at the motion to dismiss stage."); *see also,*

---

[7] Def. Memo of Law (ECF No. 9) at p. 17.
[8] Def. Memo of Law (ECF No. 9) at pp. 12-13; *see also, id*. at p. 12 ("[T]he question of privilege arises as part of the plaintiffs' affirmative case, and not merely by way of a defense.").

9

*Curry v. City of Syracuse*, 316 F.3d 324, 335 (2d Cir. 2003) ("Furthermore, when an arrest is made without a warrant, the officer has acted outside the scope of the legal process and therefore a rebuttable presumption arises that such an arrest is unlawful. The defendant has the burden of raising and proving the affirmative defense of probable cause.") (citations omitted); *Raysor v. Port Auth. of New York & New Jersey*, 768 F.2d 34, 40 (2d Cir. 1985) ("A warrantless arrest is presumptively unlawful under New York law, see *Broughton v. State*, 37 N.Y.2d 451, 457–58, 373 N.Y.S.2d 87, 94–95, 335 N.E.2d 310, 315, *cert. denied*, 423 U.S. 929, 96 S.Ct. 277, 46 L.Ed.2d 257 (1975); the plaintiff need not prove either malice or want of probable cause. Rather, the defendant has the burden of proving that the arrest was authorized under N.Y.Crim.Proc.Law § 140.10 (McKinney 1981), which requires "reasonable cause," the equivalent of probable cause, see id. Practice Commentary at 177."); *Pimintal v. New York City Police Dep't*, 19 Misc. 3d 1107(A), 859 N.Y.S.2d 906 (Sup. Ct. 2008) ("[I]t is well established that a warrantless arrest is presumptively unlawful and that the defendant has the burden of proving legal justification as an affirmative defense by showing that probable cause existed at the time of the arrest.").

The burden would then be upon Defendants to prove that the confinement was otherwise privileged, such as by demonstrating that they were officers acting pursuant to a warrant or probable cause.  Accordingly, contrary to what Defendants argue, the question of the legitimacy of the CNPD would only need to be raised in the context of an affirmative defense. *See, Kilburn v. Vill. of Saranac Lake*, No. 808-CV-00367 LEK/DRH, 2010 WL 1235576, at *4 (N.D.N.Y. Mar. 31, 2010) (citations omitted) ("Where there has been an arrest and imprisonment without a warrant, the officer has acted extrajudicially and the presumption arises that such an arrest and imprisonment are unlawful.  However, the existence of probable cause serves as a legal justification for the arrest and an affirmative defense to the claim.  The burden is on the defendant to prove probable cause of the

imprisonment."), *aff'd*, 413 F. App'x 362 (2d Cir. 2011); *Stein v. City of New York*, 22 Misc. 3d 1124(A), 880 N.Y.S.2d 876 (Sup. Ct. 2009) (citations omitted) ("An arrest made pursuant to a valid arrest warrant established a prima facie case of privilege.  However, where the arrest is made without a warrant, the defendant has the burden of proving that the arrest was justified.  To meet this burden, the defendant has the burden of showing that the arrest was supported by probable cause."); *Nolasco v. City of New York*, 131 A.D.3d 683, 684, 15 N.Y.S.3d 449, 451 (2d Dept. 2015) ("Where, as here, an arrest is made without a warrant, the existence of probable cause serves as a legal justification for the arrest and an affirmative defense to the claim.") (citations and internal quotation marks omitted); *Salvodon v. Ricotta*, No. 07-CV-174 ENV LB, 2013 WL 3816728, at *5 (E.D.N.Y. July 22, 2013) ("Even absent probable cause to arrest, a police officer will be entitled to qualified immunity if he can demonstrate that there was arguable probable cause for the arrest.") (citation omitted).

Consequently, regardless of what the Complaint may say about the legitimacy of the CNPD, Plaintiffs are not required to plead or prove, as part of their false imprisonment claim, that the CNPD is illegitimate, or that the Defendants were not properly-authorized police officers.  Instead, Plaintiffs would only need to prove that Mr. Bowman was confined without his consent, and, to the extent that the confinement was an "arrest," that the arrest was warrantless.  Plaintiffs appear to be able to make such a showing.[9]  Defendants' contention that Plaintiffs would need to additionally prove "that the CNPD is not a legitimate police force" is incorrect.

---

[9] As noted earlier, in ruling upon the instant motion the Court is required to construe all factual ambiguities in favor of the Plaintiffs.  The reasonable inference from the facts alleged in the Complaint is that no warrant was involved. *See*, Complaint at ¶ ¶ 42 (Asserting that no one at the protest was "lawfully arrested"); 59, 68, 78, 89 ("[T]hey were not legitimate officers of the law with any jurisdiction over the property or person at issue.").  Defendants do not claim otherwise.  To the extent that Defendants will attempt to show that their confinement of Bowman was privileged, they presumably intend to argue that they were legitimate police officers and that they were privileged to detain Bowman not because of a warrant, but because they had probable cause to arrest based on Bowman's trespass onto land owned by CIN, committed in their presence.

11

To the extent Defendants make this same argument[10] with respect to Plaintiffs' other tort claims, such as the claims for assault and battery, the Court similarly finds that the claims do not necessarily raise substantial issues of federal law.  That is, contrary to what Defendants maintain, Plaintiffs are not required, as part of those state law tort claims, to prove that Defendants were *not* legitimate police officers under federal law.  For example, with regard to the assault and battery claims, it would be sufficient for Plaintiffs to show that Defendants' actions were unreasonable, even assuming that Defendants were otherwise acting legitimately as police officers.[11] *See, Bennett v. New York City Hous. Auth.*, 245 A.D.2d 254, 255, 665 N.Y.S.2d 91, 92 (1997) ("The existence of probable cause for the injured plaintiff's arrest does not bar causes of action sounding in assault and battery based on the use of excessive force."); *see also, e.g., Jack v. City of New York*, No. 15CV679RRMRLM, 2017 WL 6626243, at *7 (E.D.N.Y. Sept. 28, 2017) ("Officers executing a lawful arrest are privileged to commit any battery that is reasonably necessary to effect the arrest.").

Defendants nevertheless argue that under the particular circumstances of this case Plaintiffs should not be allowed to establish the fourth element of their false imprisonment

---

[10] Namely, the argument that because the Complaint alleges that the CNPD is not a legitimate police force, Plaintiffs must prove that point as part of their state-law tort claims, which will involve federal law.

[11] *See, e.g., Ketcham v. City of Mount Vernon*, No. 17-CV-7140 (AEK), 2023 WL 2734483, at *11 (S.D.N.Y. Mar. 31, 2023) ("Civil assault under New York law is an intentional placing of another person in fear of imminent harmful or offensive contact, whereas civil battery is an intentional wrongful physical contact with another person without consent.  In order to prove an assault or battery claim in the law enforcement context, a plaintiff must also demonstrate that the defendant officer's conduct was not reasonable within the meaning of the New York statute concerning justification of law enforcement's use of force in the course of their duties. New York Penal Law § 35.30 establishes a justification defense for an officer's use of force in the course of several enumerated public duties. Of particular relevance here, the statute provides that "[a] police officer ... may use physical force when and to the extent he or she reasonably believes such to be necessary to effect [an] arrest ...." N.Y. Penal Law § 35.30(1).") (citations and internal quotation marks omitted); *see also, Santiago v. City of Yonkers*, No. 21 CIV. 764 (AEK), 2023 WL 2648649, at *8 (S.D.N.Y. Mar. 27, 2023) ("Under both the state and federal standards, "police officers' application of force is excessive if it is objectively unreasonable in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation. This analysis looks to a number of factors, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether the suspect is actively resisting arrest or attempting to evade arrest by flight.  The reasonableness of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight. A plaintiff satisfies this requirement if either the unreasonableness of the force used was apparent under the circumstances, or the plaintiff signaled her distress, verbally or otherwise, such that a reasonable officer would have been aware of her pain, or both.") (citations and internal quotation marks omitted).

claim ("not otherwise privileged") merely by showing that the confinement of Mr. Bowman was warrantless. Defendants contend, on that point, that the Complaint establishes that Defendants had probable cause to arrest Mr. Bowman for trespassing, since it indicates that Bowman was on land belonging to the CIN without permission.[12] Defendants maintain, therefore, that the only way Plaintiffs can show that the confinement was "not otherwise privileged" is to prove that the CNPD is not a legitimate law enforcement agency, which will involve issues of federal law.

However, even assuming *arguendo* that Defendants were otherwise correct in their argument, the Court does not agree that the Complaint demonstrates, as a matter of law, that Defendants were validly-authorized police officers who were privileged to confine Mr. Bowman without a warrant by virtue of probable cause. *See, e.g., Adams v. City of New York*, No. 21CV3956RPKLB, 2023 WL 2734611, at *5 (E.D.N.Y. Mar. 31, 2023) ("While defendants assert that plaintiff's arrest was supported by at least arguable probable cause to believe she was trespassing on the Property, that question is not properly decided on the limited record at the motion-to-dismiss stage."); *see also, Middleton v. City of New York*, No. 04-CV-1304 (JFB)(LB), 2006 WL 1720400, at *5 (E.D.N.Y. June 19, 2006) ("[T]here is no specific information in the plaintiff's complaint which establishes the details regarding what information was available to the police at the time of the arrest from Lucadomo, or any other source, to establish probable cause for the arrest.").[13]

---

[12] Def. Memo of Law, ECF No. 9 at p. 17 ("[T]he Complaint makes clear that Bowman entered CIN fee property without permission from the Nation. That shows that the CNPD officers had, at a minimum, a reasonable belief that Mr. Bowman had acted unlawfully.") (citations and internal quotation marks omitted).

[13] *See also, Houston v. Nassau Cnty.*, No. 08-CV-00197 JFB WDW, 2011 WL 477732, at *6 (E.D.N.Y. Feb. 2, 2011) ("[N]one of the information provided by the victim to Detective Dunn, nor any of the other information available to Detective Dunn, is before the Court in connection with the motion to dismiss. In other words, the allegations in the Amended Complaint are insufficient for the Court to conclude at this juncture that Detective Dunn had probable cause to arrest as a matter of law. Although defendants argue that the references in the complaint to Detective Dunn interviewing the plaintiff and consulting with the D.A.'s Office are sufficient to establish probable cause to arrest, the Court disagrees. These procedures, in of themselves, do not provide the critical information necessary for the Court to properly make the "probable cause" assessment question that defendant Dunn is urging the Court to consider at this juncture as a basis for dismissal. The Court must be able to determine from the pleadings what information defendant Dunn had available at the time of arrest and whether, in light of plaintiff's interview or any other information available, there were any circumstances to raise

For example, although Defendants imply that the Complaint establishes that they had probable cause to arrest/detain Mr. Bowman because he trespassed onto property owned by the CIN, the Complaint actually suggests that Bowman was on the property "lawfully,"[14] and indicates that Bowman was "attacked" and detained only after he "attempted to lawfully intercede and stop defendants from attacking other protesters, or when [he] was otherwise engaged in lawful and justifiable actions under the circumstances."[15]  The Complaint does not concede that Mr. Bowman was trespassing, nor does it indicate that he was detained for trespassing.  Additionally, the Complaint asserts that Mr. Bowman was not lawfully arrested.[16]  Such allegations do not establish that Defendants' confinement of Mr. Bowman was "otherwise privileged."  To the extent Defendants maintain that they were authorized and privileged to arrest Mr. Bowman without a warrant because he was trespassing on private property, that is an affirmative defense for which they will have the burden of proof.

Consequently, rather than Plaintiffs having to prove that Defendants were *not* legitimate police officers, Defendants will have to prove that they were legitimate officers and that they had probable cause to arrest Mr. Bowman.  Alternatively, Defendants could attempt to show that they acted reasonably even if there was not probable cause.  *See, e.g., Hernandez v. City of Rochester*, 260 F. Supp. 2d 599, 613 (W.D.N.Y. 2003) ("In a false arrest context, an individual officer is entitled to qualified immunity if: (1) it was objectively reasonable for the officer to believe there was probable cause to make the arrest, or (2) reasonably competent police officers could disagree as to whether there was probable cause to arrest.") (citations and internal quotation marks omitted); *Cianciotto on behalf of*

---

doubt as to the victim's veracity. These determinations cannot be made in this particular case at the motion to dismiss stage.").
[14] Complaint at ¶¶ 28-29.
[15] Complaint at ¶ 32.
[16] Complaint at ¶¶ 42-43.

*D.S. v. New York City Dep't of Educ.*, 600 F. Supp. 3d 434, 462 (S.D.N.Y. 2022) ("Whether defendants would be entitled to qualified immunity under New York state law turns on whether their allegedly discretionary actions were undertaken in bad faith or without reasonable basis.") (citation and internal quotation marks omitted).  Regardless, Plaintiffs do not need to prove the illegitimacy of the CNPD to establish their claims.  Accordingly, the Court agrees with Plaintiffs that their claims do not necessarily raise issues of federal law, and that *Grable* jurisdiction therefore does not apply here.

## CONCLUSION

For the reasons just discussed, the Court finds that Defendants have failed to sustain their burden of demonstrating that removal was proper.  Consequently, the Motion to Remand (ECF No. 5) is granted and the case is remanded to state court.  The Clerk of the Court is directed to close the action.

SO ORDERED.

Dated: Rochester, New York
       June 13, 2023

ENTER:

*/s/ Charles J. Siragusa*
CHARLES J. SIRAGUSA
United States District Judge